I will hear counsel in Dinsa v. Krueger. May it please the Court and Mark Furnish for Gurmeet Singh Dinsa. Your Honors, this case may not seem like much in practical terms, but make no mistake, it has substantial implications for the conceptual nature of federal habeas review and the structural power. Now, I'm not here to belabor the briefs, which on both sides are pretty extensive and highly technical in terms of the research, but to my first point quite quickly, the central error in the District Court's ruling below is the confusion of confinement on the one hand, which is a jurisdictional prerequisite for seeking federal habeas review, with what federal habeas relief actually does, which in substantial part is to vacate an unlawfully imposed conviction, and in this case, a conviction that does not violate the statute of conviction 18 U.S.C. 1512, and it doesn't violate the statute of conviction quite simply in our view because of the Supreme Court's intervening decision in the Fowler case. And that is the central flaw in the District Court's invocation of the concurrent sentence doctrine here to essentially hold the dispute in this case non-justiciable or moot simply because Dinsa is serving multiple life sentences arising from the same case. And I'm reminded, I guess, of an organized crime case that occurred, that could be before Judge Duffy all the way back in the 80s, and a defendant got up and said, you know, I regret that I have only one life to give for my country when he was imposed a 100-year sentence in an organized crime case. Not to be glib or flip about it, a life sentence is a big deal no matter how many of them are imposed, and it's a big deal. Why is it a big deal? Because in part because society wants to express the maximum amount of opprobrium possible for the defendant's conduct. If we're going to be imposing multiple life sentences arising for the course of conduct in the same case, it only follows as a matter of fairness where one or two or less than all of those life sentences are later revealed to be infirm that the defendant is entitled to some relief. And . . . Why couldn't your client have raised these issues on appeal? So, the same question, I guess, is how did Fowler change the law in the Second Circuit? Well, I think, Judge Velardo, we looked to Valise for that answer, and Valise didn't come out and say it in hack verba, but it did say that Fowler may well have changed, increased the burden of proof from one of mere plausibility or possibility on the one hand, with the prevailing standard now, which is a reasonable likelihood of a relevant federal communication. Didn't Diaz set an even higher standard, that is, at least one communication that would have been with . . . Yeah, that's a stray piece out of Diaz. It did say that, but subsequent to Diaz, Lopez reaffirmed the possibility or plausibility standard that was originally enunciated, that this Court originally enunciated in Romero. So, Diaz was the law when your client appealed his conviction, wasn't it? As was Romero, and of course, Diaz did not purport to overrule Romero, and we're not going to rehearse here the old saw that one panel can't overrule a decision of the other. So at best, we have, I wouldn't even say conflicting there, decisions that are tough to reconcile, and in any event, Lopez, which is a 2004 case, makes it crystal clear that the plausibility or possibility standard survived Diaz, and Valise, I think, makes that very clear as well. But Valise says that before Fowler, we applied the same federal nexus test to both subsections and cites Diaz. So doesn't Valise end the story for you? I mean, doesn't Valise say the law in this circuit before Fowler and after Fowler was the same? No. With respect, I think it ends the story on the change of law for the government because it says in there, quote, while Fowler may have increased the likelihood that must be demonstrated, it does not follow that a reasonable likelihood cannot be shown by the same means that we previously permitted plausibility to be shown. So that passage right there is confirming that the pre-Fowler standard in this circuit was one of plausibility, and it's strongly suggesting that Fowler increased the quantum of the government's burden, if not the means by which it can be satisfied. So I think it ends the story on that point of the appeal. Even if that's right. I mean, here, doesn't it seem likely that a federal prosecution, a federal RICO prosecution would have been brought against your client, and even though the initial prosecution investigation was conducted by the state, that the likelihood of interaction with the federal authorities was so high that there's nothing really in the, that Fowler changes? Well, even before Fowler, ma'am, Lopez made it quite clear that the mere federal nature of the offense, even if just a racketeering offense, is not enough, and there has to be additional appropriate evidence, as Valise subsequently reconfirmed. So it's not sufficient just to rely on the federal nature of the offense, even if it is a RICO offense, and there has to be the additional appropriate evidence, and even if you parse Valise very closely and look in Judge Lynch's decision and Valise candidly, it's tough to discern very much in there that goes beyond the fact that it was a federal offense, but at the end of the discussion of the facts, he does pregnantly note that at least with respect to the second obstruction conviction in that case, there was an ongoing federal investigation at the time of that offense, and I think what's really instructive in Valise is the examples that are recited of what generally would constitute appropriate additional evidence, and by the way, I digress for a second, the Snyder opinion, the 2017 Snyder opinion from the Seventh Circuit that came out during the briefing of this case also makes it very clear that the mere federal nature of the crime doesn't suffice, but to circle back for a minute, the examples that are provided at Valise, page nine of the West Law printout, tells you what would generally suffice, an ongoing federal probe at the time of the obstruction crime or actual knowledge that federal target crimes are what would have been communicated about, so that's the kind of proof that would generally suffice, and we don't have that here, even on the government's marshaling of the evidence and on Judge Corman's marshaling of the evidence, what it essentially distills to Judge Carney is that he was engaged in potential federal offenses, and we suggest that's not enough. But there was a federal investigation that actually did occur. Subsequent to the murder and the cases that I've just canvassed. But doesn't that mean that it was either reasonably likely under Fowler or would have occurred under Diaz? I think... It did happen. So doesn't that mean that there was necessarily evidence that it was reasonably likely or would have occurred? No, Judge Velardo, because it's a temporal concept. It has to be at the time of the offense, and unfortunately... I understand that, but isn't the proof in the pudding? No, because the... So what I'm saying is, temporally, at that time, it hadn't happened yet, but it was reasonably likely in the words of Fowler, and we know it was reasonably likely because it actually occurred. It has to have been reasonably likely that there would have been a federal communication at the time or near the time of the killing if the person hadn't been eliminated. How do we know this? So I take Your Honor's point. I think it's a relevant fact from which a jury could, if properly instructed, be able to infer that there was a reasonable likelihood of a contemporaneous federal communication. But we look again to Valise, where that question, even as far as I just went, and I think that would be a reasonable thing that a properly instructed jury could infer. A jury wasn't properly instructed here, but it's not enough in and of itself. And the question is reserved in Valise, quote, nor need we explore, oh, sorry about that. Arguably, the very fact that communication with federal officers took place months after Valise's solicitations, I should say, lend some support to a finding that the communications were reasonably likely at the time of the solicitations. So that's what I'm saying. I think potentially a properly instructed jury could have considered that, but it's clear that it's not enough on its own, and it's an open question under Valise. If I think I've reserved, it looks like I'm done. I've got a minute left for rebuttal, so I'll take that up if there's anything else to address. Thanks. Mr. Moskow. Thank you. May it please the Court. Nicholas Moskow for the United States of America. This Court should affirm the district court's decision on three grounds. The petition was something over which it lacked jurisdiction. The petition itself lacked merit. And the prudential concurrent sentence doctrine does permit courts to manage the workload that they have and to deal with cases in which there is nothing real at stake. The prudential sentence — oh, sorry. Why don't you begin with the jurisdictional argument? Absolutely, Your Honor. The question as to whether or not Fowler changed the law is a critical question here, but it's one that Your Honor's dealt with, I think, reasonably well. Counsel points to Valise. Valise very clearly reserves the question of whether or not Fowler changed the law in the circuit. As counsel started to say, Valise says, nor need we explore what gap, if any, exists between Fowler's reasonable likelihood standard and our previous plausibility formulation. The Third Circuit, in interpreting Fowler, has specifically cited a Second Circuit precedent to describe how Fowler should be applied. The question of whether or not Fowler changed the law here is answered best by looking to Fowler, which determined a circuit split between the way in which the statute should be interpreted. It laid out Harris on one side, the Fourth Circuit's decision, and Lopez on the other, laying out the Second Circuit's formulation, that there must be some plausible communication. Could you — following from Judge Cabranes, I'm interested in hearing your thoughts on the jurisdictional question. The district court's discussion of the concurrent sentence doctrine cited to a lot of Article III cases and suggested that he thought either there was a mootness issue here or there was nothing actually at stake. And I wondered what your comment was about that, because it seemed to me that if a court were to vacate one of Mr. Dintz's convictions, that, you know, the order might have the effect of vacating the corresponding sentence, including any mandatory assessments, for example. And so even though that is modest in the civil context, we find that sufficient to give Article III jurisdiction and to make a — for a justiciable controversy. So could you address that? Absolutely, Your Honor, and apologies if I misunderstood the previous question. I was answering the question as to whether or not 2255 would permit the court to hear a petition in this case. The prudential — the concurrent sentence doctrine is more prudential and less dependent on — in my interpretation, less jurisdictional. However, the court did cite standing concerns. Insofar as standing is relevant, the government's position is that it's relevant insofar as the challenge brought by a habeas petitioner has to be to the custody in which the habeas petitioner is held. 2255 provides a right to challenge your custody. And the Second Circuit's been very clear that custody doesn't mean simply incarceration. In Nowakowski, we discussed something — yeah, much more than that, right? Absolutely. And — Consequences of a — including a fairly remote sort, enough to at least give a baseline for jurisdiction. Nowakowski is a great place to look for the court's — for a review of the court's history and jurisprudence on the question of what constitutes custody. Nowakowski specifically draws a line between cases that deal with financial penalties, such as those that are actually the issue here, and those that deal with things like restrictions on an individual's liberty. There are times when financial penalties can be so severe as to restrict an individual — But this isn't a financial penalty so much as a special assessment that is part and parcel of a conviction. So it's a part of the criminal penalty, whereas in Nowakowski, I think they were discussing various categories of criminal proceedings under state law and differentiating an infraction or a violation or — I think it was words like that effect. That was certainly the crux of the Nowakowski decision. In evaluating what constituted custody, however, and in evaluating decisions that the circuit had previously issued, the Nowakowski court does depend on that distinction between challenges to sentence — challenges to financial components of a sentence, such as, for example, the court's decision in Kaminsky, in which it held that a restitution order did not constitute custody for the purposes of permitting a habeas petition. And challenges to other aspects, for example, community service, in which an individual would be encumbered such that he was ordered to be at a particular place or a particular time — restrictions that didn't apply to members of the public at large. So the Nowakowski court does lay a distinction there and does have a very broad interpretation of what constitutes custody, but that interpretation doesn't extend so far as to say special assessments or restitution would be consonant with the idea of custody under the court's jurisprudence. There may be financial penalties that are so significant — accompanying convictions that are so significant as to constitute restrictions on liberty, and that's the Gonzales case. However, not all financial penalties are, and Kaminsky has been applied by district courts throughout the circuit in indicating that courts cannot hear habeas petitions challenging only financial aspects of a penalty, absent something making them a restriction on liberty. This is not a case in which there is a restriction on liberty at issue. The only issue in this case is whether or not the petitioner is going to be serving four or six concurrent life sentences. Your position is there's no jurisdictional basis for the appellant to challenge this conviction, notwithstanding any presumption of collateral consequences of a criminal conviction. Is that right? There's no jurisdictional basis insofar as 2255 provides only a remedy for people to challenge their custody, for petitioners to challenge their custody, and this doesn't challenge his custody. It's also — there's also not a jurisdictional basis insofar as there needs to be a hook under the Savings Clause insofar as there was a change in law, and a petitioner has failed to identify a change in law. Fowler reasserted that the Second Circuit law remains the law. Even under the Fowler standard, for reasons that the Court pointed to previously, there is ample evidence to find that the petitioner was guilty of obstruction of justice murder. In fact, this was a case in which federal authorities were going to pursue this case. Not all federal — So if we were to differ with you on that, and if Fowler really affected — if we were an actual innocence claim, is there any way that a person with six life sentences could challenge it under habeas? Could challenge two of those six life sentences? Well, a court could decline to apply the prudential doctrine. Insofar as — So what would be the basis for jurisdiction? The basis for — well, insofar as the petitioner was not challenged in custody, there would be none. Insofar as — that would be a jurisdictional problem. However, the court could apply the concurrent sentence doctrine, even if it were to find that there are some harms that would constitute sufficient standing. How do we get to the concurrent sentence doctrine? I thought that was a discretionary basis for declining to exercise jurisdiction, but I'm trying to understand what would be the basis for jurisdiction based on your analysis. Insofar as there's no — insofar as there's no harm whatsoever, there's none. The courts have found that challenges such as these are not moot in a direct appeal context. Insofar as a habeas petition relies on 2255 to provide jurisdiction, relies on the in-custody provision to provide jurisdiction, then it would be a lack of statutory jurisdiction that would keep the court from exercising its authority to hear the petition rather than a mootness point. So to that end, the interplay between that and the concurrent sentence doctrine is, insofar as the claim asserted by the petitioner is that he is challenging his custody because he's in custody pursuant not only for life sentences not at issue, but also to two that are at issue, the concurrent sentence doctrine would permit the court to say that custody, the two that are at issue, isn't relevant to this determination because that won't affect your actual custody. It's something that's not real in this world. To that end, just briefly dealing with the petitioner's actual innocence claim, there's ample evidence in the record to support the theory that the federal government was going to pursue this massive RICO investigation irrespective of whether or not the NYPD was the first agency to be investigating it. The Indian task force worked closely with federal authorities. The record reflects that, quote, the feds wanted Singh bad, and that's at government appendix 87. There's lots of- What is the Indian task force? The Indian task force was an NYPD task force working with the United States Attorney's Office to address crimes, specifically the violent crimes at issue in this case. This is a $40 million, roughly, fraud case involving corruption of public officials. Singh had sources, the petitioner had sources at the New York City Police Department and was bribing local officials. This is precisely the sort of case that federal prosecutors love to bring, that federal authorities are extremely interested in. The case extended beyond simply New York City. And so the New York City Police Department frequently takes cases like that to the US Attorney's Office. In fact, the record reflects evidence of wrongdoing in Nassau County. This is a quintessential federal RICO investigation and prosecution. Just curious, just irrelevant question, really, how many other units do you have, or does the NYPD have, that are organized by ethnic references? I remember your office once appearing, identifying the Nigerian frauds unit, which you may still have, and now you have the Indian unit. What other units do you have? Your Honor, I'm not aware of any. The Indian task force, as far as I know, existed in the 1990s. It's referenced in the government appendix at 263. I'm not aware of its continued existence. I'm certainly not working with the Indian task force at this time. How long after the second murder did the feds get involved? What was the gap? The record's not clear as to the specific time at which the feds got involved. The federal agents were involved in dealing with the guns that were retrieved as part of Mr. Satindrajit's cooperation, so that would have been before his murder. The guns were recovered before his murder, and the FBI was responsible for dealing with the guns. Federal prosecutors were involved in an informal sense early. There's references to Leslie Caldwell, who was, I believe, the chief of the organized crime section in our office at that time, in government appendix 82 and 83, addressing the early intervention with respect to potential witnesses in the case who had been arrested. And again, the record is replete with references to how badly the federal government wanted to prosecute this case. No further questions for the rest of the papers. Mr. Furnish, you've reserved some time. Not to waste a lot of my time, but there's a Russian task force, a Eurasian task force that I'm familiar with, and lots of different ethnic groups, interesting question. Linguistically organized. I follow your Honor's train of thought that maybe they should change the names. To Judge Carney's point, let me make this very, very clear. We are not challenging the special assessment itself. It's the existence of the conviction at sentence. I understand. I wanted to just confirm my understanding of the government's position of the cases for jurisdiction, and maybe you could comment on that. Yes, I would point the court to footnotes 10 and 11 of our initial brief. If the government is right about this, then their position would raise the same suspension clause problems that animated the Treasman decision. It would raise significant constitutional doubt. I guess the suspension clause, I think it arises under the Eighth Amendment, I'm not sure. But you would want to avoid that constitutionally doubtful position and take on the much narrower reading that we're urging here. And that reading is summarized in part in footnote 11 of our opening brief. Even if the court were to invoke the concurrent sentence doctrine, and with respect to my friend over here, it's not just that the concurrent sentence doctrine has been rejected by courts on direct appeal. We marshaled opinions from the Seventh and Fifth Circuits and other circuits, and even the Ninth, where they refused to apply it in the collateral review posture. But if a court were to apply it in its discretion, the appropriate remedy, as spelled out in footnote 11 of our opening brief, is to vacate the convictions and return the special assessments. And the world isn't going to crumble if that happens here. Gurmeet Singh Dinsa is not going anywhere in four to six lives. So I don't understand the strenuous opposition to that form of relief. The Indian Task Force, as I understand it from the government's brief, that testimony is not part of the trial record in this case. It was elicited at a suppression hearing that wasn't before the jury. And more fundamentally, as we've detailed in our reply brief, what they're talking about is federal involvement ex post that was quite limited at that point to the recovery of hidden serial numbers on guns. And it's a pretty great leap to go from there to a likelihood of communication with these two particular witnesses in question. If there's no further questions, I'll rest. Thanks. We'll reserve decision.